# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 7 |
| BENJAMIN W. VANHORN, ) | |
| ) | |
|     Debtor. ) | Bankruptcy No. 20-00523 |
| --------------------------------------------------- ) | |
| UPPER EXPLORERLAND REGIONAL ) | |
| PLANNING COMMISSION, ) | |
| ) | |
|     Plaintiff, ) | Adversary No. 20-09036 |
| ) | |
| v. ) | |
| ) | |
| BENJAMIN W. VANHORN ) | |
| ) | |
|     Defendant. ) | |

## RULING ON MOTION FOR SUMMARY JUDGMENT

This matter came before the Court at an evidentiary hearing in Cedar Rapids, Iowa on November 3, 2020. Stuart G. Hoover appeared for Debtor-Defendant Benjamin W. Vanhorn ("Defendant"). Thomas L. Fiegen appeared for the Movant-Creditor Upper Explorerland Regional Planning Commission ("Plaintiff"). The Court heard testimony, received exhibits, and heard argument. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## STATEMENT OF THE CASE

Defendant filed the underlying Chapter 7 on April 2, 2020. (Bankr. No. 20-00523, ECF Doc. 1). On July 6, 2020, Plaintiff filed an Objection to Debtor's

Claim of Exempt Tools ("Objection"). (Bankr. No. 20-00523, ECF Doc. 25). On July 10, 2020, Plaintiff filed this adversary proceeding seeking a determination that obligations owed by Defendant to it are non-dischargeable under 11 U.S.C. § 523(a)(6). (ECF Doc. 1). Defendant filed his Answer on July 17, 2020. (ECF Doc. 5). On September 2, 2020, Plaintiff filed a Motion for Summary Judgment ("Motion") in the adversary proceeding. (ECF Doc. 9). The Court held an evidentiary hearing on November 3, 2020 addressing the Objection to Exemptions and the Motion.

## FINDINGS OF FACT

In November of 2016, Defendant applied for a $150,000.00 loan from Plaintiff. Defendant—who at the time of the application was doing business as American Home Services, LLC—indicated he intended to use the loan proceeds to remodel his workspace, purchase a skid loader, and provide for additional working capital for the business. At the time of the application, Defendant provided Plaintiff with a list of property to serve as collateral on the loan. (ECF Doc. 9, at 23). The estimated value of the collateral was in excess of $100,000.00.

Plaintiff approved Defendant for a loan of $60,000.00. Plaintiff took a first-priority security interest in all of Defendant's inventory and equipment, a purchase-money security interest in the skid-loader, and required Defendant to execute a personal guaranty. Defendant received the loan proceeds on November

21, 2016. (ECF Doc. 9, Exhibit B, at 21). Plaintiff perfected its security interest the same day. (ECF Doc. 9, at 22). On November 28, 2016, Defendant used $41,500.00 of the loan proceeds to purchase a "2015 Case TR310 skid steer loader" ("Skid-Loader"). (ECF Doc. 9, at 20). Plaintiff perfected its interest in the Skid-Loader on December 6, 2016. (ECF Doc. 9, Exhibit C, at 24).

Defendant made payments until March of 2018 when his loan payment checks began to bounce. After some communication, Plaintiff agreed to allow Defendant to make interest-only payments for an initial period of six months. This arrangement was extended several times. Without informing Plaintiff, Defendant sold the Skid Loader to a third party during this time.

Plaintiff alleges that sometime around the end of 2019, Defendant stopped returning Plaintiff's calls or answering its emails. This lack of response from Defendant continued into the early months of 2020. Defendant is a military veteran who suffers from post-traumatic stress disorder. Defendant asserts that the lack of communication was due to the nature of his work, his mental condition, and a general lack of attentiveness to returning calls and emails. In March of 2020, Defendant's interest-only check bounced.

Defendant filed for Chapter 7 relief on April 2, 2020. After the filing, Plaintiff learned Defendant had sold the Skid Loader and Plaintiff made several efforts to recover. With the help of the Winneshiek County Sheriff, Plaintiff

3

eventually located the Skid Loader in the possession of a subsequent purchaser. Plaintiff has not received the proceeds of the sale, nor has it recovered the Skid Loader.

## PARTIES' ARGUMENTS

### A. Objection to Claimed Exemption

Defendant's Schedule C claims as exempt under Iowa Code § 627.6(11): "Misc tools of the trade including Spray Foam Rig" (Bankr. No. 20-00523, ECF Doc. 1, at 27). At the time of the filing, Defendant was operating his construction business as American Home Services, LLC. That business no longer exists. Defendant has since taken employment with First American Roofing and Siding in Holmen, Wisconsin. Defendant states that most of the tools pledged as collateral to Plaintiff are used in his current position.

On July 6, 2020, Plaintiff filed its Objection to the claimed exemption. (Bankr. No. 20-00523, ECF Doc. 25). As grounds for its Objection, Plaintiff asserts that it has a purchase money security interest in the tools, the value of the tools exceeds the statutory exemption limit, and the tools are no longer tools of the trade because the Defendant is an employee of a roofing company in Wisconsin. Plaintiff further asserts that even if the Court finds that Defendant is entitled to the tools of the trade exemption, Plaintiff's purchase money security interest encumbers all of Defendant's tools and its purchase money security interests may

not be avoided under Iowa law. Plaintiff also questioned whether Defendant is still a resident of Iowa entitled to Iowa exemptions.

Defendant filed his response on June 14, 2020. (Bankr. No. 20-00523, ECF Doc. 32). Defendant argues that he has, at all times relevant to this bankruptcy, been a resident of Iowa. Defendant asserts that his homestead remains in Iowa and that out-of-state employment is irrelevant to his residency. Defendant further asserts that the presence of a security interest does not preclude a claim for exemption under Iowa law. Finally, Defendant argues that while Plaintiff did extend credit in excess of the $10,000.00 statutory limit for the exemptions, the tools have now declined in value and fall within the exemptions limit. Defendant asserts that the relevant value for purposes of the exemption is the value of the tools at the time of the bankruptcy filing, not the original value at the time of the loan.

**B. Motion for Summary Judgment on Adversary Proceeding**

On July 10, 2020, Plaintiff filed this nondischargeability action under 11 U.S.C. § 523(a)(6). Plaintiff alleges that Defendant, without notice, sold the Skid Loader in 2018, during the time when Defendant was being allowed to make interest-only payments. Plaintiff asserts that the first time it received notice of the sale was when Defendant filed for bankruptcy in April of 2020. Plaintiff has not received any of the proceeds from the sale. Defendant has not assisted in locating

5

or recovering the Skid Loader. In short, Plaintiff argues that the sale of the Skid Loader, retention of proceeds, and failure to assist with locating and recovering of the Skid Loader constitutes a willful and malicious injury to Plaintiff under § 523(a)(6).

Defendant filed his Answer on July 17, 2020. Defendant first argues that the loan from Plaintiff was not "purchase money" for the Skid Loader and was not contemporaneous with its purchase. Defendant further argues that a debt is nondischargeable under § 523(a)(6) only if the act is intended to cause injury and done maliciously with knowledge that the act is wrong. Defendant argues that he did not act with any such intent. He argues merely transferring secured collateral is insufficient to establish a willful and malicious injury.

On September 2, 2020, Plaintiff filed this Motion for Summary Judgment. Plaintiff argues Defendant knew that selling the Skid Loader and not remitting the proceeds would harm Plaintiff's rights, and thus was "willful." Plaintiff argues Defendant acted maliciously because he objectively knew that by selling the Skid Loader without notice to Plaintiff—and not helping locate and recover it—would cause Plaintiff financial harm. Plaintiff requests that the outstanding debt of $50,477.84, less any proceeds from sale of tools that Defendant surrenders to Plaintiff, be held nondischargeable.

Defendant argues summary judgment is inappropriate for several of reasons. Defendant points to a litany of facts in dispute. Defendant argues that these disputed facts, material to the issues at hand, preclude summary judgment. Defendant further argues that summary judgment is inappropriate in cases like this where the mental state of a party plays a dominant role in the disposition of a case. Defendant argues this state of mind is almost always an issue for trial.

Defendant also argues that even if Plaintiff can prove the state of mind necessary to succeed, Plaintiff must also prove damages and that it has mitigated its losses. He notes the Skid Loader was worth only $41,500.00 when it was new. Defendant asserts the remaining $18,500.00 for loan proceeds was used for operating expenses. Defendant sold the Skid Loader, a goose-neck trailer, and attachment to a third party for $30,000.00. Defendant argues these facts show that even if there were an exclusion from discharge related to the Skid Loader, there would need to be a substantial reduction from the original $60,000 loan.

These issues were addressed at the November 3, 2020 hearing and are ready for decision.

## DISCUSSION

### A. Objection to Claimed Exemption

A debtor in Iowa may only claim Iowa exemptions. Iowa Code § 627.10; see also In re Pickard, No. 11-01819, 2012 Bankr. LEXIS 4868, at *12-13 (Bankr.

7

N.D. Iowa Oct. 15, 2012). Under Iowa law, a Debtor may claim an exemption for "tools of the trade." Iowa Code § 627.6(11). That section provides: "If the debtor is engaged in any profession or occupation other than farming, [a debtor may hold exempt] the proper implements, professional books, or tools of the trade of the debtor or a dependent of the debtor, not to exceed in value ten thousand dollars in the aggregate." Id. When a debtor claims an exemption, an interested party must object, or the exemption will be deemed approved by operation of law. Fed. R. Bankr. P. 4003(c). The objecting party bears the burden of proving that the exemption is not properly claimed. Id.

Plaintiff's Objection is based on three arguments. First, Plaintiff argues that the value of the tools exceeds the $10,000.00 statutory limit. Second, Plaintiff argues that, to the extent Defendant's employer provides him with tools to use on the job, Defendant's tools are "unnecessary" and therefore no longer tools of the trade under § 627.6(11). Third, Plaintiff contends that even if Defendant is entitled to use the exemption, Plaintiff holds a purchase-money security interest in the tools which may not be avoided under Iowa law. The Court will address each argument in turn.

1. **Statutory Exemption Limit**

In support of its contention that the value of the tools exceeds the statutory limit, Plaintiff claims it relied on Defendant's own $100,000.00-plus valuation he

gave when he applied for the loan. Plaintiff never inspected the tools or verified their condition prior to advancing loan proceeds.

On September 25, 2020, Plaintiff finally did conduct an inspection of Defendant's tools. That inspection revealed that the tools were worth substantially less than $10,000.00. At the hearing on November 3, 2020, Plaintiff's own witness testified that the current value of the tools had an estimated value of $1,500.00 - $2,000.00. The Court thus finds there is not collateral available to Plaintiff beyond the allowed exemption amount.

**2. Change of Employment Status**

It is undisputed that Defendant used the tools in his former construction business. While he no longer runs that business, he continues in the trade as an employee with a Wisconsin roofing and siding company. Plaintiff has not identified any authority supporting its position that a debtor's transition—within the same general trade—from employer to employee precludes him from using the tools of the trade exemption. Plaintiff's additional argument—that to the extent Defendant is supplied with tools by his employer, his tools are unnecessary and cannot be tools of the trade—is not supported by any evidence in the record.

**3. Lien Avoidance**

Plaintiff finally argues Defendant cannot avoid Plaintiff's lien on the tools because the lien results from a purchase-money security interest in the tools

9

Defendant claims as exempt. The Bankruptcy Code does not define purchase money security interest. Instead, courts have routinely looked to state law to determine whether a purchase money security interest exists. In re Ackerman, Bankruptcy No. 94-21846KD, Chapter 7, 1995 Bankr. LEXIS 2198, at *7 (Bankr. N.D. Iowa Apr. 12, 1995) (citing In re Hansen, 85 B.R. 821, 824 (Bankr. N.D. Iowa 1988); In re Ganders, 176 B.R. 581, 583 (Bankr. N.D. Okla. 1995)).

Under Iowa law, "[a] security interest in goods is a purchase-money security interest…[in those goods] **to the extent that the goods are purchase-money collateral with respect to that security interest.**" Iowa Code § 554.9103(2)(a) (emphasis added). Purchase-money collateral means "goods or software that secures a purchase-money obligation incurred with respect to that collateral." Iowa Code § 554.9103(1)(b). A purchase-money obligation is "an obligation of an obligor incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used." Iowa Code § 554.9103(1)(a).

The simple fact is that the loan money did not go for purchasing the tools. Defendant applied for a loan to remodel his workspace, purchase the Skid Loader, and provide for additional working capital. The fact Plaintiff took a blanket security interest in Defendant's **existing** inventory and

equipment, does not convert the loan proceeds to purchase-money for the tools. Defendant had already purchased the tools.

Based on the record, Plaintiff's security interest is a purchase-money security interest only to the extent of the Skid-Loader. Iowa Code § 554.9103(2)(a) ("[a] security interest in goods is a purchase-money security interest…[in those goods] **to the extent that the goods are purchase-money collateral with respect to that security interest.**"). (*i.e.*, $41,500.00 of the loan is a purchase-money obligation and the purchased Skid Loader is purchase-money collateral). The purchase-money security interest simply does not reach the tools Defendant claims as exempt.

## B. Motion for Summary Judgment

### 1. Summary Judgment Standard

Summary judgment is governed by Federal Rule of Bankruptcy Procedure 7056. Rule 7056 applies Federal Rule of Civil Procedure 56 in adversary proceedings. Fed. R. Bankr. P. 7056. Rule 56 provides:

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. **The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.** The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a) (emphasis added). "'Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the non-movant, no genuine issues of material fact exist, and the movant is entitled to judgment as a matter of law.'" Johnson v. Carroll, 658 F.3d 819, 825 (8th Cir. 2011) (quoting Hayek v. City of St. Paul, 488 F.3d 1049, 1054 (8th Cir. 2007)).

"The burden of demonstrating that there are no genuine issues of material fact rests on the moving party." Winthrop Res. Corp. v. Eaton Hydraulics, Inc., 361 F.3d 465, 468 (8th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)). "A 'material' fact is one 'that might affect the outcome of the suit under governing law. . . .'" Johnson v. Cooks, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "[A] genuine issue exists when the evidence is such that a reasonable fact finder could find for the non-movant." In re Maxey, 395 B.R. 665, 670 (Bankr. W.D. Mo. 2008) (quoting Buscaglia v. United States, 25 F.3d 530, 534 (7th Cir. 1994)). Evidence that raises only "some metaphysical doubt as to the material facts" does not create a genuine issue of fact. Matsushita Elec. Indus. Co. v. Zenith Radio, Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). As the moving party, Plaintiff

bears the burden of demonstrating that there are no genuine issues of material fact. Winthrop, 361 F.3d at 468.

### 2. 11 U.S.C. § 523(a)(6)

Section 523(a)(6) of the Bankruptcy Code excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). To succeed, a creditor must prove by a preponderance of the evidence that the injuring act was both "willful" and "malicious." Barclays Am./Bus. Credit, Inc. v. Long, (In re Long), 774 F.2d 875, 880-81 (8th Cir. 1985); see also Fischer v. Scarborough, (In re Scarborough), 171 F.3d 638, 641 (8th Cir. 1999) (both are distinct elements and must be proven by a preponderance of the evidence); Grogan v. Garner, 498 U.S. 279, 286-87, 112 L. Ed. 2d 755, 111 S. Ct. 654 (1991) (holding that the preponderance of the evidence standard applies to § 523 claims). To prove willfulness the Plaintiff must show that Defendant **intended to cause the injury**, rather than commit the act which ultimately causes the injury. Kawaauhau v. Geiger, 523 U.S. 57, 64, 118 S. Ct. 974, 140 L. Ed. 2d 90 (1988) (emphasis added). To prove malice, the creditor must prove debtor's conduct was **specifically targeted at the creditor**. In re Lewis, 424 B.R. at 460 (citing In re Madsen, 195 F.3d 988, 989 (8th Cir. 1999)) (emphasis added).

Plaintiff has alleged that Defendant sold the Skid Loader in 2018 without notice and without remitting the proceeds of the sale. Plaintiff has further alleged that Defendant failed to return its calls and emails and failed to assist with locating and recovering the Skid Loader. Plaintiff believes that Defendant was objectively aware that these actions would cause it to suffer financial loss, and that his decision to act in light of that knowledge demonstrates willful and malicious intent.

Defendant testified that he did not understand the nature of Plaintiff's security interest in the Skid Loader. Based on prior experience with banks holding a security interest in other pieces of property, Defendant believed he could buy and sell property as needed. Defendant testified that the only reason he sold the Skid Loader was to cover operating and various overhead expenses, and that the business endeavor for which the Skid Loader had been purchased was no longer profitable.

Defendant also candidly admitted that he was struggling at that time with his PTSD. He noted the stress of all of this overwhelmed him, and negatively effected decision-making and judgment. He simply did not have the capacity to fully think through his decisions at that time. Moreover, the Skid Loader was sold in 2018, at a time when Defendant was making interest-only payments. Despite the sale, Defendant continued to make these interest-only payments until March of 2020, just prior to filing this bankruptcy.

Viewing the evidence and drawing all reasonable inferences in the light most favorable to Defendant, the Court finds that Plaintiff has failed to establish that Defendant's actions were willful and malicious; that is, that Defendant specifically sold the Skid Loader with the intent to cause Plaintiff financial harm. Thus, the Court finds that a genuine issue of material fact with regard to Defendant's intent exists, such that Plaintiff is not entitled to summary judgment.

## CONCLUSION

The Court finds that Plaintiff has failed to establish that there is no genuine issue of material fact regarding Defendant's intent in selling the Skid Loader. Thus, Plaintiff's motion for summary judgment is **DENIED**.

Dated and Entered:
February 25, 2021

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE